calendar today so we'll proceed with the first argument Bollinger the Abbott laboratories and we have for the appellant mr. bizarre good morning your honor your honors may I plead the court my name is Lucas is art of adjustment Kirshenbaum I'm accountable for Michael Bollinger we're here on appeal from the judgment to Abbott labs mr. Bollinger's claims for age discrimination brought under the New York City human rights law in granting a motion the district court there are two main respects first the found that mr. Bollinger's claim relating to a 2015 specialization in which mr. Bollinger sales partner territory was given we given a markedly unequal composition as compared to those younger peers was time-barred under the city human rights laws for your statute limitation the district court reaches conclusion by misapplying the broad continuous violations and is applicable to claims under the city's new life law second with respect to mr. Bollinger's claims related to the 2017 elimination of his New York territory and ultimatum that he moved to New Jersey if you want to remain employed at Abbott the district court failed to properly assess and give appropriate weight to evidence produced by mr. Bollinger suggesting that the reason effort proffers to justify 2017 conduct the low workload of mr. Bollinger's territory was false misleading or incomplete so going I guess going back to the 2015 ruling at the time that the district court ruled as to the application of the continuous violation doctrine it did not have the benefit of the first department's recent decision and spent over independence of the disabled which makes clear that a single act of discrimination tolls the city human rights law statute limitation so long as continuous wrong caused by that act persists mr. bizarre let it mr. judge Bianco let me just ask you a question I just want you to put the continuing violation issue the timely issue aside and just ask you about the ultimate question I should know they articulated the reason for the specialization and you you up point that your client got the lowest workload I guess my question to you is if we're looking to see whether or not the difference of age discrimination could be drawn from this and you know as a district court judge I saw a lot of age discrimination cases and usually you would see the motive in trying to replace an older worker with a younger worker lower you know pay from some type of motive of that nature but here you can correct me up from wrong it's it seems undisputed that although he may have gotten a lower workload after that he was promoted he got a larger bonus they raised his pay so it wasn't like he was a commissioned employee and there you know he was making less money or I just don't understand what the motive would be if by virtue of the reassignment workload he was at least doing the same if not the workload is the only measure by which the reason for which it took action against mr. Bollinger in 2017 so the the workload is the metric by which Abbott measures the viability of a territory and it is that very workload that was disproportionately affected by Abbott's actions in 2015 so you're saying you're not saying in of itself it would it just it demonstrates discriminatory intent you're saying they were setting him up for later for 2017 is that essentially what you're arguing no I'm arguing that the in 2015 the the composition of mr. Bollinger's territory the fact that he had the lowest workload out of all of the representatives in the district the fact that his territory was the you know least had the least amount of opportunity out of everyone else in the district all of them are younger than mr. Bollinger and the fact that his immediate supervisor mentioned how long he was going to be around in the act of giving him that territory suggests that in creating the territories Abbott gave mr. Bollinger the oldest employee in the district the least beneficial territory and that as a result of that Abbott later eliminated his territory but why why was it the least beneficial territory if he was promoted and made more money and got a bonus why was it the least beneficial territory because in the only metric that Abbott measures the workload it was the worst off I mean the the the pay issue I mean yes he did receive a pay grade increase not really a promotion it was a pay grade increase if you look at the film at the record the the fact that his job didn't didn't change as much as it did until 2017 is not really the issue I know I think the important thing to remember is we're under the city human rights law which does not require any material adversity it just requires unequal treatment and here the unequal treatment is caught derived from the workload and it comes to a real head in 2017 when it caused the elimination of mr. Bollinger's territory I know I'm not I'm trying to find how a jury could possibly rationally refer age discrimination if you tell someone look your your area is fell below the we're offering you closer to your home it looks like the same money right yes there's no there is no decrease in his pay but let's be I think again we need to be very clear about what a jury could find under under the city human rights law there is no need for a jury to find that there is a reduction of pay there is no need for a jury to find that he was that he was disadvantaged or by being close at the home I understand you have to have some evidence some evidence from which they can infer a discriminatory motive so I'm not suggesting there has to be a low and low pay but they you have to look at the whole situation and say could a jury have any some evidence what would be the some evidence that they could rely on to say this is a discriminatory motive with respect to 2015 or 2017 well let's focus on 2017 now okay with respect to 2017 first mr. Bollinger's territory was the only territory in the district that was eliminated his territory after he was after he left his territory was divided up and given to his younger peers which you know this court has held can be an influence of discrimination when an older employee's job duties are split up and given to younger employees a younger employee will I don't really understand that if he was the oldest employee anyone who would have been assigned to would have been younger and so from that we're to draw an inference of discrimination right that's in right the discord is held that when an older job an older employee's job duties are not simply eliminated when that employees eliminate but rather split up give it to everybody else that can draw discrimination well let me also ask you about the I think the act or the statement here was you know asking about how long he planned to be around is it ever appropriate for an employer to ask an employee about the retirement plan or is that sort of a per se age discrimination no I don't think it's necessarily per se age discrimination but I think it's very clearly you have to look at the question in context in which it was made and here the question of how much longer you're going to be around was asked of mr. Bollinger in the very meeting in which he was given the territory with the lowest workload in the district with distinctly inequitable composition as compared to all of his younger peers so in that context the remark is not a stray remark and I don't think it is just a an innocent question about how you know about his retirement plans the question how much longer you're going to be around when he's giving an old the oldest employee the worst territory in the district raises an additional infant of discrimination but I just I just want to get back to 2017 in addition to all the other inferences of discrimination here I mean I think the stallion one of the selling points is that added witnesses cannot really explain or not on the same page as to the effect of the low workload on the elimination of mr. Bollinger's territory so one of the witnesses is saying mr. Brown his immediate supervisor is saying that the low workload justified that the elimination of the territory the other witness mr. VT testified that he never considered the elimination of territory until after he was informed that mr. Bollinger was retiring so under the city human rights law that discrepancy that conflict is independently probable of consciousness and guilt and that is an independent basis for inferring a discriminatory motive but their reason was the same that his workload was too low why would that be material the fact that one thought this was you know a possible solution where another person thought it was the only solution there both of them had the exact same reason this workload was too low right right but the fact that the both of them agreed on the reason for an action does not necessarily mean that that reason justified every action so I like to reaction if if one supervisor thought that you know an employee's tardiness justified a written warning and another supervisor told by the employee later you're tardiness because of you were late and firing you that's the script they both agree that the lateness necessitated some sort of disciplinary action but the actual action taking is a conflict with one another and that's the thing this is just Jacobs what was the workload of the New Jersey territory that he was offered and declined I mean what is normally low nor even high I mean I believe the thing was to confine him to a territory where where opportunities were within on the ground then then then that would seem to me to be an unsustainable argument if they offered him a territory closer to home that that that one that was larger but had more opportunities I just think I'm not sure I mean I can look at you know during my time and see but you are not alleging that he was offered and an undesirable alternative that it was it was New Jersey on the other hand it was close to the home and you are not alleging there was anything unsatisfactory about it or that it had the deficiencies that you allege adhered in the in the in the assignments that that he had originally well I think that the real nub of being asked to transfer to a new territory is the fact that it would require mr. Bollinger to start all over again and rebuild relationships that he had already had in New York so this is not apples and apples this was here is a developed territory that you that in which you know the players and what you've worked in for some 30 years versus going to a territory where you don't know that you know the relevant players you have to build those relationships you have to start again from square one so surely that surely that's a challenge that faces young people when they get hired and they're given a territory yes the challenges are are are the same but the but the act of having the act of singling out an older person to ask them to move to a new territory based on the effect of a territory that was disproportionately worse than all the under the City Human Rights Law I mean the the first department and even the Court of Appeals have held that a change in geographic location is an adverse action under the City Human Rights Law so the fact that he was asked to move at all is adverse and the the fact that Abbott cannot explain the New York Human Rights Law I believe covers everyone over 25 years of age are you saying that anybody 25 years or older was asked to move to a different office to a different territory potentially has a an age discrimination claim in New York City oh well only when there's evidence that would support the fact that that was done for this criminal discriminatory motive because of their age and and here there is and that and that evidence is derived from one the inequitable composition of the territory to the fact that Abbott is using that very terrorist as the product of that territory the low workload caused by that inequitable territory as the reason for asking mr. bone or requiring that mr. bone to move and three the ability of Abbott's witnesses to get on the same page as to whether or not that actual low workload definitely required the elimination of the territory when you say he was required to move he wasn't required to move his home he was he went to a different territory closer to home I mean usually if you wanted to get rid of somebody you'd give them up you know a territory in Idaho and they say I'm not going and then they they would quit but this territory was in in in every respect seemingly superior except that that they'd have to develop it okay I just respectfully I believe that a reasonable jury could conclude that giving a seven-year-old employee a territory in which they would have to start again at that age under under circumstances suggesting that the territory they were in was inequitable because of their age that jury could conclude that that was a non-trivial alteration of that employee terms and conditions of employment and that is the standard used under the city human rights law all right mr. but bizarre I think you're your time is I know you have two minutes for rebuttal we'll hear from mr. Whitman thank you your honor may it please the court this is Robert Whitman of Cyfarth Shaw on behalf of the Appley defendant Appley Abbott laboratories the plaintiff Michael Bollinger was a longtime employee of Abbott who chose to retire in 2017 after more than 40 years with the company rather than explore a possible change in his assigned sales territory in response to the unacceptably low workload in his existing territory the district court judge Atkin reviewed these events conducted a careful and and concluded that the plaintiff had not shown any genuine issue of material fact to link his separation from the company to discrimination based on his age and as such he dismissed the plaintiff's single claim under the city human rights law the district court construed the facts in the plaintiff's favor as required on summary judgment and applied any of the undetermined legal standards in the more plaintiff friendly way that's obviating the need for it to decide and for this court to decide any of the contested or undecided issues of New York City law that the case may present the plaintiff has given this court no basis to disturb those conclusions on appeal the plaintiff's burden is to show that he was treated less well than others because of his age and if the plaintiff is unable to link his treatment to a discriminatory motivation specifically his age his claim fails and summary judgment is appropriate there's no need for this court to examine the prima facie case and those related steps of the inquiry because the district court proceeded directly to the ultimate question of pretext and concluded that there was no evidence of age discrimination here as has been discussed thus far there are two independent series of events that are at by time by decision makers and by business rationale in 2015 Abbott went through what is called a specialization that is outside the three-year limitations period and therefore not actionable the plaintiff does not dispute the timing but argues the continuing violation doctrine saves the claim but there is no specific no sufficient evidence to support application of that doctrine here and then the second series of events occurred more than two years later in 2017 in response to the plaintiff's unacceptably low workload it's important to keep in mind that everyone on the plaintiff sales team experienced a decline in their workload following the 2015 specialization and in fact others experienced a much greater percentage decline than the plaintiff did the minimum acceptable standard was 800 hours and the plaintiff in 2017 was at 346 hours and he was the only one below the acceptable minimum threshold so Abbott's supervisors the plaintiff's new supervisors at the time concluded that his territory was not viable but his have shown the plaintiff made more money after the specialization and received a promotion a great increase and in response to the visors suggested a very sensible solution that appeared favorable for the plaintiff he would experience no change in pay or status he would be assigned actually closer to home than he was his home in New Jersey rather than having to commute to Long Island there is no requirement in this sales territory unlike in some companies there was no requirement of having existing relationships or a book of business or anything of that nature it's not the way this role on the other hand I mean one of the central assets of a salesman is is the book of business and a set of existing relationships I mean everybody has competitors will have a better acquaintance with the people to whom one is selling it's not it could be a major thing to change somebody's changing a salesman's territory if they if the salesman has had it for a long period of time I understand that your honor but but that it that happened to everybody in the 2015 specialization there were various hospitals that had been assigned to one salesperson or then and the company made the decision because of the way they were structuring the customers and the sales territory that they would switch those customers up so everyone regardless of their age experienced a change in their assigned customers in 2015 and that would and that had whatever effects it had and that would have been true for the plaintiff in 2017 in New Jersey had he chosen to accept that assignment but again this was not a relation not a position where it was where one success or failure was dependent upon having relationships and exploiting those relationships or developing a book of business or a volume of sales the way they were judged as we've seen was based on the workload associated with the territory and there is nothing in the record to indicate that that territory that was proposed to him in New Jersey was not viable or that there was that it was just some sort of fictional creation designed to force him out there's nothing in the record whatsoever to support any argument to that effect. Mr. Whitman let me ask you you said the beginning that they met with him to explore possible change but as you heard and it was in the papers there seems to be at least some testimony that the territory had to be eliminated so I know there's a question about materiality and I put at a minimum there's a factual dispute about going into that meeting whether it was to just explore changing his territory or that that decision had already been made. There was the plaintiff makes tries to make much of the argument that there was some discrepancy in the explanations for the 2017 events but in fact the explanations of the two supervisors Mr. Siddiqui and Mr. Brown were actually quite consistent. Mr. Siddiqui who is the more senior supervisor testified that when they first discussed the issue they did not discuss eliminating the plaintiff's territory but simply saw his low workload and discussed the need to find a solution for his low workload. Mr. Brown testified that Mr. Siddiqui told him, Brown, that the plaintiff's territory was not viable and that the workload was too low but not what would happen as a result and that it was only in subsequent conversations that Mr. Siddiqui said that the territory would be eliminated. The record is clear on that point and so when Mr. Brown spoke with the plaintiff he told him that his territory was not viable but did not tell him that his territory was being eliminated and that's because Mr. Brown's boss Siddiqui that was consistent with what his own boss had told him. The plaintiff's declaration saying that Mr. Brown told him that the territory was being eliminated in the first conversation that actually contradicts the plaintiff's deposition testimony on that point as we discussed in our papers and in fact so it was the two Abbott supervisors. What occurred in light of that conversation is that the plaintiff chose really not even to engage about the possibility of the new territory and instead he unilaterally submitted retirement papers through human resources and chose instead to accept his or to begin receiving payments under his long-vested pension and to retain his Abbott stock and to enjoy an active retirement. The plaintiff testified he was not aware of what would have happened if he had dug his feet in and stayed in the new territory and he acknowledged in fact that he might have stayed five more years if he had chosen to stay on and have the new territory and in connection with the 2017 events and as we've noted completely different set of supervisors at issue during those events there are no comments, no alleged comments, not even a single stray remark or any other reason to suspect that there was an age-related motivation whatsoever in connection with the 2017 events and so for those reasons we urge the court to affirm the judgment of the district court and find that the district court properly granted summary judgment in Abbott's favor. Unless the court has any further questions we'll rest on our papers. All right, thank you Mr. Whitman. Mr. Bizarre, you have two minutes in rebuttal. Thank you, your honor. I just want to go through some of the evidence concerning the definite dispute about whether that decision had already been made or whether this is an ongoing process of exploring, you know, alternatives as Mr. Whitman suggests. So I mean I think the most important evidence is Mr. Sabiki testifies on page 98 of the appendix that he did have to find the resolution to the workload of Mr. Bollinger's territory and did any of those resolutions involve a simple elimination of the territory and Mr. Sabiki testifies we never went down that path until after Mr. Bollinger told us he was not interested in the New Jersey territory and he opted to retire. So it's very clear that Sabiki only considered elimination of the territory after he knew that, after he was told that Mr. Bollinger was not going to be in the territory. But Mr. Brown testifies that when he met with Mike to explain the territory of New Jersey, I met with Mr. Bollinger, this is on page 374 of the appendix, I met with Mr. Bollinger, we spoke about the viability of territory and that the territory was no longer going to be viable or it wouldn't be there and that there was another territory available for him to work. There is substantial evidence that, coming from Mr. Bollinger, that Mr. Brown told him his territory was being eliminated. You know, Abbott has tried to make a manufacturer some sort of contradiction between Mr. Bollinger's declaration and his deposition testimony, but as we explained in our reply, there is no real conflict there. At his deposition on page A, appendix 314, Mr. Bollinger expressly testifies or confirms that Mr. Brown told him that his territory was being eliminated and that the opportunity was available to go to the same type of job in New Jersey. And Mr. Bollinger said, well, when I get on page 405 of the appendix, there's an email, a contemporaneous email, where Mr. Bollinger says to Mr. Brown, for our conversation today on primary direction, I called HR to inquire about a possible payout given that my position is being eliminated and offered a transfer to New Jersey. So there can be no dispute that Mr. Brown told Mr. Bollinger's position was being eliminated, and there can be no dispute that Mr. Siddiqui never considered the elimination of the territory until after Mr. Bollinger told Abbott he was retiring. And that is the real dispute. That is the real conflict between these two witnesses. And I don't know if there's any questions. I think I'll rest my time here. Thank you. To both of you, we will reserve the decision. Have a good day. Thank you, Your Honor.